WATSON ELECTRICAL CONSTRUCTION COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Watson Electrical Constr. Co. v. Commissioner
Docket No. 477-75.
United States Tax Court
T.C. Memo 1976-4; 1976 Tax Ct. Memo LEXIS 400; 35 T.C.M. (CCH) 8; T.C.M. (RIA) 760004; January 7, 1976, Filed Frank P. Meadows, Jr., for the petitioner. Mathew E. Bates, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined deficiencies in petitioner's Federal income taxes for the fiscal years ended March 31, 1972, and March 31, 1973, in the amounts of $6,682.30 and $2,861.85, respectively. Some adjustments have been conceded. The only issue presented for our decision is whether petitioner is entitled to *402 deduct from taxable income in its fiscal years ended March 31, 1972, and March 31, 1973, that portion of expenses incurred in connection with the maintenance and operation of an entertainment facility, and two boats used in connection with that facility, attributable to the personal use of the facility and boats by petitioner's president. All of the facts have been stipulated by the parties. We adopt the stipulation of facts and the exhibits attached thereto as our findings. The pertinent facts are summarized below. Watson Electrical Construction Company (herein referred to as petitioner) is a corporation organized under the laws of the State of North Carolina. At the time the petition was filed herein and during the years in controversy, its principal office and place of business was in Wilson, North Carolina. Its Federal corporate income tax returns for the fiscal years ended March 31, 1972, and March 31, 1973, were filed with the Memphis Service Center, Memphis, Tennessee. Since its inception and during the fiscal years ended March 31, 1972, and March 31, 1973, T. Lester Watson, Jr. (herein referred to as Watson) was the president of the petitioner corporation, and the majority *403 stockholder of Welcon Management Company, Inc. (herein referred to as Welcon), which owned all of petitioner's outstanding stock. During the years here involved, petitioner paid Welcon to manage petitioner. Welcon, in turn, provided management for petitioner by furnishing it with the managerial services of Watson, who was an employee of Welcon rather than of petitioner. Petitioner leased cottages on the Pamlico River in North Carolina from Watson during the fiscal years here involved for use as an entertainment facility, and maintained two boats for use in connection with the cottages. The cottages and related facilities were used for business related entertainment as well as for personal use by Watson. Records were maintained in both years on the use of the cottages and related facilities. For the fiscal year ended March 31, 1972, the cottages and related facilities were used for entertainment purposes a total of 117 days: 72 days represent personal use of the facilities by Watson and 45 days represent use of the facilities for business related entertainment. During the fiscal year ended March 31, 1973, the facilities were used for entertainment purposes a total of 270 days: 88 *404 days represent personal use of the facilities by Watson and 182 days represent use of the facilities for business related entertainment. On June 8, 1965, the board of directors of petitioner adopted a resolution which provides that corporate expenditures attributable to the personal use of the entertainment facility by Watson will be treated by petitioner as additional compensation to him. In pertinent part, the resolution states: RESOLVED, that the River Account, which is maintained to record all expenses, including rent and all expenses of maintenance upkeep, of the Pamlico River place incurred during the corporation's fiscal year shall be apportioned on the basis of the tax deductible and nondeductible portions of these expenses. That portion which is tax deductible to the corporation shall be an expense of the corporation. The amount which is for personal use and not allowable as a tax deductible expense of the corporation shall be treated retroactive to April 1, 1965, as compensation to T. L. Watson, Jr., President and Director of this corporation, which compensation is in addition to the compensation he receives as an employee of Welcon Management Co., this corporation's *405 parent company. On May 25, 1965, the board of directors of Welcon adopted a similar resolution concerning the use of the entertainment facility by Watson. In part, it provides that: the River Account, which is maintained, to record all expenses, including rent and all expenses of maintenance and up-keep, of the Pamlico River place incurred during the Corporation's fiscal year shall be apportioned on the basis of the tax deductible and nondeductible portions of these expenses. The total account shall be an expense of the corporation. The amount which is considered for income tax purposes for personal use and not allowable as a tax deductible expense of the corporation shall be considered as additional compensation to T. L. Watson, Jr. While the two corporate resolutions state that the amounts expended on the facility attributable to its personal use by Watson are to be treated as compensation to him, petitioner did not treat them as such on its Federal income tax returns. For the fiscal years ended March 31, 1972, and March 31, 1973, it treated rental payments made to Watson, for the use of the cottages and other expenses it incurred in connection with use of the cottages for *406 entertainment purposes, as travel and entertainment expenses, and deducted them as such on their Federal income tax returns for those years. Watson, however, did treat such amounts as additional compensation to him, and included the amounts as income on his individual Federal income tax returns for those years. In July or August of both 1972 and 1973, Eugene S. Stone, a certified public accountant, prepared schedules to determine the amount of withholding that should be withheld from the income of Watson by his employer, Welcon, for the remainder of those calendar years. The amount of $5,084 was included as anticipated income to Watson on the schedule prepared for 1972. That amount, included as miscellaneous income from petitioner and identified by the word "River," was computed as follows: Total expense through March 31, 1972 = $10,262.91; less casualty loss repairs estimated at $2,000 = $8,262.91; divided by 117 days = $70.62 per day; multiplied by 72 days personal = $5,084. The amount of $7,500 was treated as anticipated income to Watson on the schedule prepared in 1973. It was identified as "Other Income - River, cars, etc." On its Federal income tax return for the fiscal year *407 ended March 31, 1972, petitioner deducted $10,471.04 as travel and entertainment expense. Of that amount, $5,560.65 represents personal use of the entertainment facilities by Watson. In that same fiscal year, petitioner claimed $3,080.96 as depreciation on its two boats used in connection with the facility; $1,895.97 represents personal use of the boats by Watson. On its Federal income tax return for the fiscal year ended March 31, 1973, petitioner deducted $13,661 as travel and entertainment expense. Of that amount, $3,702.82 represents personal use of the entertainment facility by Watson. In that same fiscal year, petitioner claimed $2,515.96 as depreciation on the two boats used in connection with the entertainment facility; $820.02 represents personal use of the boats by Watson. It is only with respect to those amounts deducted as travel and entertainment expense by petitioner, attributable to the personal use of the cottages and boats by Watson, that the parties are in disagreement. The resolution of the controverted issue turns first upon whether or not section 274 [1] is applicable to the facts of this case. If section 274 is applicable, we must decide how it should be applied *408 in these circumstances. Petitioner first argues that the section 274 issue does not arise with respect to petitioner, but should only arise with regard to a deduction by petitioner's parent corporation, Welcon Management Company, and the corresponding taxation of its employee, Watson, for the personal use of the entertainment facility. We reject this argument because the petitioner rents and maintains the entertainment facility for the benefit of its officers and employees. Consequently, the petitioner has claimed a deduction for travel and entertainment expenses with respect to that facility. Welcon is not its owner or operator. Hence we are concerned with the tax treatment accorded the use of the facility by petitioner, not Welcon. Petitioner's primary contention is that under section 162(a)(1) it is entitled to a deduction for reasonable compensation paid to Watson as an ordinary and necessary business expense. This contention is based on the corporate resolution of June 8, 1965, under which it has treated the amounts attributable to Watson's personal use of the entertainment *409 facility as additional compensation to him. Respondent, on the other hand, asserts that since the petitioner has stipulated that the cottages and boats constitute entertainment facilities, the provisions of section 274 are applicable, and that no deduction should be allowed unless the additional requirements imposed by that section have been met. We agree with the respondent. Section 274 is concerned with the disallowance of certain entertainment expenses. Once it is shown, as here, that the items relate to entertainmentactivities or entertainmentfacilities, the provisions of section 274 come into play. Section 274 was added to our tax laws in the Revenue Act of 1962. Its purpose was to correct some of the widespread abuses which had developed through the use of the expense account. The formal requirements imposed by section 274 are in addition to the requirements for deductibility imposed by other provisions of existing law. Section 1.274-1, Income Tax Regs.
According to the Senate Report [2] on section 274, if an expenditure is claimed as a business expense deduction under section 162, the taxpayer must first establish that it constitutes an ordinary and *410 necessary expense before section 274 becomes applicable. Section 274 is exclusively a disallowance provision. It does not make deductible any expense which is disallowed under any other section of the Code. The abuses which the President sought to eliminate were revealed by Secretary of the Treasury Dillon at the hearings on the Revenue Act of 1962. An audit of 38,000 tax returns in 1960 revealed: * * * claimed deductions totaling $5.7 million for club dues, $2 million for theater tickets and similar amusements, over $1 million for hunting lodges and fishing camps, $2.6 million for yachts, and $11.5 million for business gifts. Most significantly, the audit shows that only a small portion of these expenses can be disallowed under existing law. The difficulty in administering present law is shown by the fact that, even though most of the claimed expenditure for entertainment was allowed under the existing generous standards, almost 50 percent of the returns had to be adjusted by internal revenue agents. These adjustments resulted in the disallowance of $28.3 million of claimed travel and entertainment *411 expense. In addition, it was determined that $29.5 million of the claimed deductions constituted unreported income in the nature of dividends or additional compensation to stockholders, officers, or employees. [3]
An example of the way in which the courts liberally interpreted section 162, prior to 1962, can be seen in Sanitary Farms Dairy, Inc.,25 T.C. 463 (1955). There, O. Carlyle Brock was the president, treasurer, and a director of Sanitary Farms. The taxpayer purchased milk, processed some of it, and distributed milk and milk products throughout Erie, Pennsylvania, and its environs. Brock began an advertising practice in 1938 of inviting wholesale customers and prospective customers to the plant, where he and his wife served them dinners of game which he had shot on hunting trips throughout the North American continent. Motion pictures taken on these hunts were shown at the dinners, and the expenses of those dinners were borne by the taxpayer. Around 1948, the taxpayer's advertising manager noted the publicity that had been given to an individual from a nearby city who had traveled *412 to Africa on a big-game hunting trip, and suggested that Brock and his wife consider such a trip as a device to obtain more advertising and publicity for the business. Soon thereafter, the taxpayer decided to send Brock and his wife, both experienced hunters, to Africa on a hunting safari. The trip lasted from May until November of 1950. Both the Brocks and the dairy received considerable publicity. The films they took during the trip were shown in auditoriums throughout the Erie area early in 1951. On its 1950 income tax return the taxpayer claimed, as part of its advertising expenses, $16,818.16 of the amount paid in that year as expenses of the African safari. The Commissioner disallowed $15,618.16 of the expenses of the safari. In allowing the deduction as an advertising expense, we said (25 T.C. at 468): The portion of the cost of the safari accrued and paid in 1950 was deductible in whole in that year as a relatively small part of the advertising program carried on by the Dairy. No part of that cost is taxable to the Brocks as personal travel and pleasure expense of theirs. They admittedly enjoyed hunting, but enjoyment of one's work does not make that work *413 a mere personal hobby or the cost of a hunting trip income to the hunter. There is evidence that this trip represented hard work on the part of the Brocks, undertaken for the benefit of the Dairy, rather than as frolic of their own. * * * While the Sanitary Farms Dairy case is not directly concerned with expenses attributable to an entertainment facility under section 274, it does indicate just how lenient the courts were prior to enactment of some of the more recent disallowance sections of the Code. Section 274 was one of those sections designed to curb the abuses stemming from the growing use of business expense accounts and the liberal interpretations given to section 162 by various courts. We have concluded that the resolution of this case depends upon an application of section 274 to the particular facts and circumstances involved. The parties here have stipulated that the petitioner maintained an entertainment facility for the use of the company and its employees. In order for a deduction to be allowed for the expenses of maintaining and operating the facility, petitioner must meet the requirements of both sections 162 and 274. Respondent does not challenge the deductibility *414 of the expenses under section 162. He only attacks their deductibility under section 274. Section 274 imposes two requirements for petitioner's "entertainment expenses" to be deductible. Subsections (A) and (B) of section 274(a)(1) provide that no deduction shall be allowed for any item: (A) Activity.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directlyrelatedto, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the activeconductofthetaxpayer'stradeorbusiness, or (B) Facility.--With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was usedprimarily for the furtherance of the taxpayer's trade or business and that the item was directlyrelated to the active conduct of such trade or business, * * * [Emphasis supplied.] These subsections require *415 that four determinations be made initially with regard to petitioner's "entertainment expenses": (1) Whether the activity constitutes entertainment; (2) whether the cottages and boats constitute a facility; (3) whether the facility was "used primarily" for the furtherance of petitioner's trade or business; and (4) whether the activity was "directly related" to the active conduct of petitioner's trade or business. And, finally, we must determine whether any of the exceptions provided in section 274(e) are applicable here. The first two determinations have been made easier for us by the parties since they have stipulated that the cottages and boats constitute an entertainment facility, as that term is used in the statute and in the regulations. [4] We think it is clear that the petitioner did lease from Watson and did use the cottages and boats as an entertainment facility. *416 The third determination is whether the facility was used primarily for the furtherance of petitioner's trade or business. The regulations give us some guidelines for making this determination. Section 1.274-2(e)(4)(iii), Income Tax Regs., provides: (iii) Entertainmentfacilitiesingeneral. A taxpayer shall be deemed to have established that-- (a) A facility used in connection with entertainment, such as a yacht or other pleasure boat, hunting lodge, fishing camp, summer home or vacation cottage, hotel suite, country club, golf club or similar social, athletic, or sporting club or organization, bowling alley, tennis court, or swimming pool, or, (b) A facility for employees not falling within the scope of section 274(e)(2) or (5) was used primarily for the furtherance of his trade or business if he establishes that morethan50percentofthetotalcalendardaysofuse of the facility by, or under authority of, the taxpayer during the taxable year weredaysofbusinessuse. * * * [Emphasis supplied.] For the fiscal year ended March 31, 1972, the facilities were used for business purposes only *417 45 out of a total 117 days of use. Clearly the petitioner has failed to meet the "primary use" test of section 274(a)(1)(B) for 1972. Unless petitioner qualifies under one of the exceptions provided in section 274(e) its expenses incurred on the facility for that year will not be allowed as a deduction. For the fiscal year ended March 31, 1973, the facilities were used for business related entertainment for 182 out of 270 days of use. Therefore, the petitioner meets the "primary use" standard of section 274(a)(1)(B) for 1973. The fourth determination must be made with respect to petitioner's "entertainment expenses" incurred in its 1973 fiscal year. To be entitled to a deduction for such expenses, the petitioner must meet the "directly related" test of section 274(a)(1)(A), i.e., the expenditures must have been directly related to the active conduct of petitioner's trade or business. Here the expenditures were attributable to the personal use of the facility by Watson. They are not directly related to the active conduct of petitioner's business, and thus are not deductible unless they qualify under one of the exceptions provided in section 274(e). The effect of sections 274(a)(1)(A) *418 and (B) is to deny petitioner a deduction for expenses attributable to the personal use of the entertainment facility by Watson. Petitioner, however, argues that if section 274 is applicable to this case at all, it should still prevail under section 274(e)(3), which provides: (e) Specific Exceptions to Application of Subsection (a).--Subsection (a) shall not apply to-- * * *
(3) Expenses treated as compensation.--Expenses for goods, services, and facilities, to the extent that the expenses are treatedbythetaxpayer, with respect to the recipient of the entertainment, amusement, or recreation, ascompensationtoanemployee on the taxpayer's return of tax under this chapter and as wages to such employee for purposes of chapter 24 (relating to withholding of income tax at source on wages). [Emphasis supplied.] To prevail under section 274(e)(3) the petitioner must have treated the expenditures with respect to the recipient (Watson) of the entertainment as compensation to an employee. Petitioner contends that it has complied with the spirit, if not the letter, of section 274(e)(3) because its consistent policy has been to treat the *419 portion of the cost of the use of the facilities attributable to Watson's personal use as additional compensation to him. Although petitioner, on its Federal income tax returns, treated those sums as travel and entertainment expense, petitioner feels that this fact should have no effect upon the deductibility or nondeductibility of those items, where there was no concealment, respondent was not misled, and Watson, the ultimate recipient, treated the amounts as compensation. Thus petitioner argues that even though it treated those expenditures otherwise on its tax returns, they were not entertainment expenses but were, in fact, compensation.
Looking to the express language of the statute, we must disagree with petitioner. Section 274(a) is applicable to the facts here and is determinative unless the petitioner qualifies under one of the exceptions to section 274(e). It does not so qualify. Petitioner did not treat the expenses as compensation to an employee. It treated them as travel and entertainment expenses. Furthermore, Watson is not an employee of petitioner; he is an employee of Welcon. Plainly the requirements of section 274(e)(3) have not been met, and that exception is *420 not applicable here. Petitioner cites several cases to support its position. Primarily it relies on Bell Oldsmobile, Inc.,T.C. Memo. 1963-76, as being almost identical to its situation here. In Bell Oldsmobile the Commissioner determined deficiencies in the taxpayer's income taxes for the years 1956 and 1957. The issue there was whether the unexpended portions of travel and entertainment allowances, paid by petitioner during such years to its two key officer-stockholders, were deductible by it as additional compensation for their services. On February 6, 1956, at a meeting of the board of directors, the salaries of each of the two officer-stockholders were fixed at $52,000, "in addition to any money or monies to be drawn by them for any entertainment and expenses." At that same meeting a resolution was passed declaring that any unexpended sums drawn by them for entertainment and expenses be considered additional wages. The Commissioner contended that the portion of those amounts which were not expended in each year for such purposes were not deductible, but were nondeductible distributions of corporate earnings. We concluded that: we are satisfied on the *421 record before us that the unexpended portions of the allowances qualify as additional compensation. They were comparatively minor in amount, being less than 10 percent of the fixed salaries in one year and less than 5 percent in the other; the corporate minutes early in 1956 explicitly provided that any such unexpended portions of the allowances were to be treated as compensation; and the parties herein have stipulated that these amounts do "not constitute excessive and unreasonable compensation." This is not a case where a corporation has paid out disguised dividends and has sought to characterize them belatedly as compensation for services. Although it is true that the corporate resolution in 1956 was the product of those who controlled the corporation and benefited from it, we see no reason in this case to refuse to give effect to it where the Government has agreed that the amounts in question would not result in excessive or unreasonable compensation. While the facts in Bell are very similar to those in the present case, our opinion in that case is not controlling. During the years in issue in that case (1956 and 1957) the Revenue Act of 1962 was not in effect, and thus section *422 274 was not a part of our tax law. Nor was that case concerned with an entertainment facility. We were not limited in Bell by section 274 restrictions. Hence it provides no precedent for petitioner. Likewise, the petitioner's reliance on Maggio Bros. Co.,6 T.C. 999 (1946), and Challenge Manufacturing Co.,37 T.C. 650 (1962), is misplaced. Accordingly, we hold that the expenses incurred by petitioner for the maintenance of the cottages (entertainment facility) and of the boats used in connection with that facility are not deductible from taxable income to the extent that they are attributable to the personal use of the facility and boats by the petitioner's president. To reflect the concessions made by the parties and the conclusions reached herein, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. S. Rept. No. 1881, 87th Cong., 2d Sess. 27 (1962), 1962-3 C.B. 733↩.
3. Hearings, Ways and Means Committee, 87th Cong., 1st Sess. 42-44 (1961).↩
4. Entertainment is defined in section 1.274-2(b)(1)(i), Income Tax Regs., as: (b) Definitions--(1) Entertainmentdefined--(i) Ingeneral. For purposes of this section, the term "entertainment" means any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as entertaining at night clubs, cocktail lounges, theaters, country clubs, golf and athletic clubs, sporting events, and on hunting, fishing, vacation and similar trips, including such activity relating solely to the taxpayer or the taxpayer's family. * * * Facility is defined in section 1.274-2(e)(2), Income Tax Regs., as: (2) Facilitiesusedinconnectionwithentertainment--(i) Ingeneral.↩ Any item of personal or real property owned, rented, or used by a taxpayer shall (unless otherwise provided under the rules of subdivision (ii) of this subparagraph) be considered to constitute a facility used in connection with entertainment if it is used during the taxable year for, or in connection with, entertainment (as defined in paragraph (b)(1) of this section). Examples of facilities which might be used for, or in connection with, entertainment include yachts, hunting lodges, fishing camps, swimming pools, tennis courts, bowling alleys, automobiles, airplanes, apartments, hotel suites, and homes in vacation resorts.